UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DARREN BROWN,

                                Plaintiff,                            **COMPLAINT**

             -against-                                   **JURY TRIAL**
                                                                         **DEMANDED**

THE CITY OF NEW YORK,
DETECTIVE DANIEL GUARIANO, and
DETECTIVE BRUCE KAPP,

                              Defendants.
------------------------------------------------------------------------X

       Plaintiff, DARREN BROWN, by and through his attorneys, **THE LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC,** as and for his Complaint, respectfully alleges, upon information and belief:

## PRELIMINARY STATEMENT

1. Plaintiff Darren Brown was falsely arrested for a shooting on January 22, 2014 without lawful basis, prosecuted without probable cause and jailed for approximately 27 months until a jury acquitted him of all charges after a trial. The City, and its police officers and detectives, including Defendants Guariano and Kapp, unreasonably relied on the purported identification of Plaintiff as the perpetrator of a crime by an unreliable informant, and purportedly ignored the overwhelming evidence exculpating Plaintiff Darren Brown and withheld that information from the District Attorney, from Criminal and Supreme Court judges, and from the Grand Jury. Had Defendants not violated Darren Brown's rights and instead properly investigated the matter and not withheld and suppressed evidence, Darren Brown's arrest and subsequent prosecution would not have happened.

## JURISDICTION

2. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States of America.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

4. On April 21, 2016, Plaintiff Darren Brown filed a Notice of Claim arising out of his acquittal with respect to the criminal prosecution underlying this case.

5. Plaintiff's claims arising out of his acquittal have been herein filed within one year and ninety days of the accrual of those causes of action.

6. Plaintiff requests that the Court invoke pendent jurisdiction over Plaintiff's state law claims arising from his acquittal. The state law claims derive from the same occurrence and transaction which gives rise to the federal law claims and the state law claim has a common nucleus of operative fact with the federal claims.

## VENUE

7. Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claim occurred in this District.

## JURY DEMAND

8. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

9. Plaintiff Darren Brown is an African-American resident of the City of New York, the County of Richmond, and the State of New York.

10. Defendant, THE CITY OF NEW YORK ("CITY"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

11. Defendant, THE CITY OF NEW YORK, maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, THE CITY OF NEW YORK.

12. At all times hereinafter mentioned Defendants Daniel Guariano and Bruce Kapp were duly sworn police detectives, agents, and employees of said department and were acting under the supervision of said department and according to their official duties. Defendants Daniel Guariano and Bruce Kapp are sued herein in their official and individual capacities.

13. At all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or CITY OF NEW YORK.

14. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant, THE CITY OF NEW YORK.

15. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant, THE CITY OF NEW YORK.

## FACTS

### Plaintiff's Arrest, Prosecution, and Acquittal

16. The event out of which the Plaintiff Darren Brown was arrested and prosecuted occurred on January 21, 2014 at or about 6:00 P.M., when two individuals, Kendrick Gray (a/k/a "K") and Nolan Whistleton (a/k/a "Danger), were shot and killed in the vicinity of an apartment complex located at 141 Park Hill Avenue, Staten Island, New York.

17. At this time, Plaintiff was lawfully present at or near the location of the shooting, though he was not engaged in any unlawful or suspicious activity, and he was not the shooter.

18. As a result of this shooting, Plaintiff Darren Brown, a mere bystander, was shot in the leg.

19. On January 22, 2014, at about 10:45 A.M., Plaintiff was lawfully present inside of 15 Federal Place, Richmond County, State of New York.

20. At this time, the Defendants arrived on duty and detained Plaintiff.

21. The Defendants took photographs of Plaintiff leg wound from the shooting, and then placed him under arrest for the shooting, which had occurred less than 24-hours before.

22. The decision to arrest Plaintiff Darren Brown was made by Defendant Daniel Guariano, who was charged with investigating the shooting.

23. Defendant Guariano made the determination to arrest and prosecute the Plaintiff Darren Brown without any objectively reasonable crime scene investigation or forensic analysis; and without otherwise objectively reasonable factual basis on which to form a probable cause belief that Plaintiff Darren Brown committed the double homicide.

24. Based on Detective Guariano's improper and unconstitutional investigation, Plaintiff Darren Brown was indicted by a Richmond County, New York grand jury on fourteen

separate charges under the New York State Penal Law including multiple counts of homicide, among them murder of two individuals in the first degree; two counts of attempted robbery; and two counts of criminal possession of a weapon.

25. Plaintiff Darren Brown pled not guilty to each and every count on which he was indicted.

26. Plaintiff Darren Brown was tried before a petit jury of his peers at a trial held in a Criminal Term of the Supreme Court of the State of New York, County of Richmond, Part 16 (the Honorable Mario Mattei presiding), commencing on March 22, 2016 and concluding on April 6, 2016.

27. On April 6, 2016, Plaintiff Darren Brown was acquitted by that jury on each and every count of the indictment which had been returned against him in 2014.

28. There was no objectively reasonable fact basis to form the belief that there was probable cause for the arrest and prosecution of the Plaintiff.

29. Throughout Plaintiff's arrest and detention, Defendants knew that Plaintiff was not the perpetrator of the crimes for which he had been arrested and incarcerated.

30. At the time of his unlawful detention and imprisonment, Plaintiff had not committed any illegal act.

31. At the time of the unlawful detention and imprisonment, Plaintiff had not committed or attempted to commit any crime.

## The Defendants' Investigation

32. Defendant Daniel Guariano was assigned to investigate the shooting deaths of Gray and Whistleton.

33. Guariano's investigation of the shooting revealed the presence of at least two other individuals at the scene of the shooting when it took place.

34. Both of these individuals, named Kevin McMaster and John Green (an alias) lived at 141 Park Hill Avenue, where the shooting occurred.

35. Plaintiff Darren Brown did not live at 141 Park Hill Avenue.

36. At the time of the shooting, Mr. McMaster was found running away from the scene of the shooting and appeared to be intoxicated.

37. At the time of the shooting, Mr. Green and Mr. McMaster had multiple violent felony convictions.

38. Despite their presence at the scene of the shooting, their violent felony past, and the fact that they both resided at the scene of the shooting, the Defendants never investigated Mr. McMaster and Mr. Green as suspects.

39. Mr. Green was on parole at the time of this shooting, having just served ten years in prison for a violent felony.

40. Defendant Guariano attempted to interview Mr. McMaster about the shooting, but Mr. McMaster was too intoxicated to participate in the interview by Guariano.

41. Detective Guariano interviewed Mr. Green about the shooting and, in so doing, did not follow protocol in taking statements from Mr. Green.

42. Moreover, Detective Guariano did not inform the Richmond County District Attorney's office that he failed to follow protocol in taking witness statements from Mr. Green.

43. In attempting to establish probable cause to arrest Darren Brown, Detective Guariano relied, in part, on the unreliable and false information provided to him by Mr. Green.

44. Defendant Guariano ostensibly relied on Mr. Green's story in purporting to have probable cause, despite Detective Guariano's knowledge the he did not follow protocol in taking witness statements from Mr. Green.

45. Detective Guariano did not disclose the fact of his failing to follow protocols and the unreliability of his investigation and witness statements to the District Attorney.

46. Specifically, for instance, Defendant Guariano did not generate a report of the manner in which he identified John Green as a witness, and how he came to learn that John Green was present at the scene of the shooting.

47. Detective Guariano was required to generate such a report, though he did not, and he did not disclose this fact or the manner in which he identified John Green, to the district attorney.

48. Defendant Guariano, upon identifying Mr. Green as someone who was present at the scene of the shooting, went to Mr. Green's house, spoke to him, and upon information and belief, made no record of the conversation which was held at Mr. Green's residence, and did not disclose this fact to the district attorney.

49. During the private conversation between John Green and Defendant Guariano at John Green's residence, several of Mr. Green's family members were present (individuals who were also related to Plaintiff Darren Brown), though Detective Guariano did not speak to those family members in an attempt to corroborate Mr. Green's self-serving story.

50. Moreover, there is no report, as required, as to how John Green came to be at the 120th Precinct at or about 2:40 A.M. on January 22, 2014 after Defendant Daniel Guariano spoke with John Green at his residence in it is believed the late night of January 21, 2014.

51. It is believed that John Green was transported to the 120th Precinct Detective Squad by someone from the 120th Precinct Detective Squad.

52. Once at the 120th Precinct and before John Green wrote out a statement in his own hand at or about 2:40 A.M. on January 22, 2014, Defendant Daniel Guariano spoke with John Green.

53. There is no report, as required, as to what Defendant Daniel Guariano stated to John Green and what John Green stated to him at the 120th Precinct before John Green wrote out his statement.

54. There is, however, a statement written out by John Green and given to Defendant Daniel Guariano.

55. There is no report, as would be the required protocol, about how the report was written out; who was present at the time it was written; and the protocol followed in that regard and respect.

56. Accordingly and because of the failure to follow protocols, there is absolutely no written material to measure the consistency or lack of consistency of what John Green wrote with what he stated on at least two occasions to Defendant Daniel Guariano prior to John Green writing out his story.

57. There is nothing in writing by which to address whether the written statement was influenced by Defendant Daniel Guariano as it was being written.

58. As part of his investigation, Defendant Guariano went to the residence of Mr. Bush (an alias) who, it is believed, resided on the same floor at 141 Park Hill Avenue as John Green.

59. At the time and place, Defendant Daniel Guariano retrieved from Mr. Bush's fire escape a wrapped up black t-shirt which contained a (Black) Star 9mm Firearm, a magazine

containing 1 .9mm round wrapped in a gray washcloth. This was believed to be the murder weapon used in the shooting.

60. It is significant that neither John Green nor Mr. Bush was ever charged or indicted for complicity in the homicides and/or for other criminal conduct in the aftermath of the shootings.

61. Defendant Bruce Kapp was assigned to go to the vicinity of 141 Park Hill Avenue, Staten Island, New York to assist in the investigation of the shootings of Whistleton and Gray

62. Defendant Bruce Kapp is a detective in the Crime Scene Unit of the New York City Police Department.

63. Defendant Bruce Kapp received specialized training in order to perform his duties as a member of this unit.

64. He was assigned to assist Defendant Guariano, who was leading the investigation.

65. Defendant Bruce Kapp arrived at the 141 Park Hill Avenue, Staten Island, New York crime scene location at approximately 8:40 P.M.

66. When Defendant Bruce Kapp arrived at the location, he spoke with Defendant Daniel Guariano.

67. The only thing that Defendant Bruce Kapp did was what Defendant Daniel Guariano asked him to do even though Defendant Bruce Kapp had the authority and background and training to expand his efforts to do things which in his judgment were required to be done in order to properly investigate the shooting.

68. Defendant Bruce Kapp did not do any of his own forensic investigation.

69. Defendant Bruce Kapp never went to the apartment where John Green resided.

70. Although Defendant Bruce Kapp was aware that clothing was found in a trash compactor and a gun was recovered from Mr. Bush's fire escape—Defendant Kapp never went to either the trash compactor or the fire escape to take photographs, to gather evidence, or to take samples for transfer to a laboratory for evaluation and assessment.

71. Defendant Kapp did not test all of the clothing found in the compactor, though some of it belonged to John Green.

72. Defendant Bruce Kapp never undertook any crime scene investigation functions with respect to the trash compactor or with respect to the fire escape even though he could have done so and should have done so notwithstanding that Defendant Daniel Guariano did not ask him to do so.

73. Defendant Kapp did not do an adequate analysis for the DNA or fingerprints of John Green or Mr. Bush from the weapon that was recovered from Mr. Bush's fire escape.

74. What the DNA analysis indicated, however, is that Plaintiff Darren Brown's DNA was not on the grip of the gun that was utilized to shoot and kill Gray and Whistleton.

75. Defendants Daniel Guariano and Bruce Kapp deliberately and with callous, malicious, and reckless indifference did nothing to ascertain whose DNA was the primary DNA contributor on the gun.

76. Defendants Kapp and Guarino also failed to speak to several key witnesses.

77. Subsequent to the determination made by Defendant Daniel Guariano on January 22, 2014 to have the Plaintiff arrested for the shooting deaths of Gray and Whistleton, the Defendants, individually and collectively, undertook no further meaningful or even minimally consequential efforts to address the shooting deaths of Gary and Whistleton.

78. Plaintiff was arrested for the shooting before the autopsies of the deceased victims were completed.

79. The results of the autopsies made clear that Plaintiff had not committed the shootings.

80. There was no forensic evidence linking Plaintiff to the crime.

81. Defendant Daniel Guariano reviewed video material obtained from security cameras at the 141 Park Hill Avenue housing complex which indicated that Plaintiff, Darren Brown, was not the shooter.

82. Nonetheless, Defendant Daniel Guariano secured an arrest warrant for Plaintiff Darren Brown based, almost solely, on evidence that he knew was false and misleading.

83. The Defendants failed to disclose to the Richmond County District Attorney's office the deficiencies in their investigation, and the true manner in which Plaintiff, Darren Brown, was chosen as the main and only suspect.

84. The Defendants purposely ignored the physical evidence that showed that Plaintiff was innocent of the crime of which he was accused.

85. The Defendants did not have any probable cause to believe that Plaintiff had committed any illegal acts.

86. The Defendants were aware of the significant indications that each witness with whom they reported speaking to were not reliable sources of information.

87. The Defendants were aware of materially impeaching circumstances and grounds for questioning the credibility and reliability of the witnesses', including John Green's, credibility, and yet Defendants failed to make appropriate inquiries to get the real killer off of the streets and to spare Darren Brown the wrongful incarceration.

88. The Defendants were aware that nothing John Green told them was corroborated by any other evidence.

89. The Defendants never investigated John Green or his relationship to the Plaintiff, the victims of the shooting, or other witnesses at the scene.

90. The Defendants failed to conduct a full and complete investigation; failed to conduct proper witness interviews; failed to follow up on relevant leads and information provided to them; failed to document pertinent information; failed to safeguard evidence including DNA and forensic evidence; failed to notify the District Attorney of possible exculpatory evidence; and failed to reasonably assess the totality of the circumstances to determine whether probable cause to arrest Plaintiff existed, or not.

91. The failures and improper acts, each of them detailed herein, caused the District Attorney to proceed with Plaintiff's prosecution.

**THE DEFENDANT CITY'S UNLAWFUL STANDARDS, POLICIES, PRACTICES, CUSTOMS AND PROTOCOLS AND TRAINING WHICH PROPELLED THE INDIVIDUALLY IDENTIFIED DEFENDANTS' UNCONSTITUTIONAL CONDUCT**

92. The unconstitutional conduct of Defendants Daniel Guariano and Bruce Kapp were propelled by the reckless and deliberately indifferent standards, policies, practices, customs, protocols and training of the New York City Police Department's Crime Squad Units, and the manner in which its members interact with New York City Police Department precincts.

93. The City's standards, policies, practices, customs, protocols, and training are particularly reckless and deliberately indifferent in cases of major felony crime investigations where the basic inculpating evidence is obtained from an unreliable source in an effort to close

the investigation as quickly as possible, and to do no subsequent investigation in light of new facts which exculpate a suspect.

94. It is believed that, as a matter of standards, policy, practice, custom and protocol only one person within the Crime Squad Unit of the specific precinct is designated as the "lead investigator" rather than two individuals designated as co-lead investigators, to carry the burden of the investigation; and to be a check, one on the other; to ensure that investigations of violent felony murders are conducted properly and with the goal of apprehending the true criminal and, in this case, the true killer(s).

95. Upon information and belief, there is no supervisor within a Crime Squad Unit and/or within the precinct structure to evaluate, counsel, inform, advise, and to oversee the actions and inactions of the Crime Squad unit lead investigator in order to assure the quality of the investigation and to make sure that there is sufficient reliable and credible evidence on which to base a probable cause belief to arrest a particular individual for the crime being investigated.

96. For an example, in this matter, if there had been legally and constitutionally adequate New York City Police Department standards, policies, practices, customs, and protocols in place and training relative thereto, Defendant Daniel Guariano would have been required, prior to charging Plaintiff with a double homicide, to speak with the New York City Medical Examiner's Office after the completion of the autopsy on the victim's body, to ascertain whether it could reasonably be concluded that Plaintiff was the shooter.

97. As for another example, in this matter, if there had been legally and constitutionally adequate New York City Police Department standards, policies, practices, customs, and protocols in place and training relative thereto, Defendants Daniel Guariano and

13

Defendant Bruce Kapp would have interacted and taken actions, collectively, to make sure that all forensic and Crime Scene Unit activities were coordinated and all bases covered in order to have a full and complete investigation, particularly where there appeared to be other possible suspects at the scene of the shooting.

98. It is believed that there are no standards, policies, practices, customs, protocols and training for the coordination between the Crime Squad investigator engaged in a major felony crime investigation and the investigation unit of the District Attorney's Office even when investigators of the District Attorney's Office had performed functions associated with the major felony crime investigation being pursued by a New York City Police Department precinct Crime Squad Unit.

99. Police officers assigned to a District Attorney's investigation Unit are New York City police officers designated by the New York City Police Department to an assignment in the investigation unit/squad of the specific County District Attorney's Office.

100. The absence of standards, policies, practices, customs, protocols, and training related to the coordination between a Crime Squad Unit of the New York City Police Department precinct and the investigative unit of the County District Attorney's Office, allow cases which have no probable cause to proceed to grand jury presentations and trial, propelling thereby unjust and unlawful arrests and unjust and malicious and unlawful prosecutions which could and would otherwise be avoided by the appropriate standards, policies, practices, customs, protocols and training.

101. Thus, if there had been appropriate standards, policies, practices, customs, and protocols and training, the Defendants Daniel Guariano and Bruce Kapp would not have commenced and pursued the false arrest and malicious prosecution of Plaintiff.

## **DAMAGES**

102. Plaintiff Darren Brown was incarcerated for approximately twenty-seven months under the jurisdiction of the City of New York at its Rikers Island correctional facility.

103. Plaintiff Darren Brown suffered immense emotional distress and mental anguish knowing, as he did, that he did not commit the double homicide with which he was charged; or any other crime with which he was charged; or any crime whatsoever; but knowing, too, that although he was innocent, nonetheless he faced a imprisonment for much of his adult life if convicted of the crimes with which he was unjustly and unlawfully charged and for which he was unjustly and unlawfully being prosecuted.

104. Because Plaintiff Darren Brown was innocent, he could not plead guilty to crimes he did not commit.

105. The pressure under which Plaintiff Darren Brown lived while being incarcerated at Rikers Island was unbearable.

106. Even today and after having been acquitted of the crimes with which Plaintiff Darren Brown was charged and which he did not commit, Plaintiff Darren Brown continues to suffer emotionally and psychologically.

107. The amount of damages which Plaintiff Darren Brown is seeking is incalculable.

108. Plaintiff Darren Brown seeks both compensatory and punitive damages.

109. The actions and inactions of the Defendant New York City police officers and the standards, policies, practices, customs, protocols, and training related thereto, of the Defendant City of New York violated the rights of the Plaintiff as guaranteed under the laws and Constitution of the United States, specifically the Civil Rights Act of 1872, 42

U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution and the state of New York.

## FIRST CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983
(against the individual defendants)

110. Plaintiff DARREN BROWN repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

111. As a result of the defendants' conduct, plaintiff was subjected to illegal, improper and false arrest, taken into custody, and caused to be falsely imprisoned, detained, and confined without any probable cause, privilege, or consent.

112. As a result of the foregoing, plaintiff's liberty was restricted and he was put in fear for his safety and liberty without probable cause.

## SECOND CLAIM FOR RELIEF
## MALICIOUS PROSECUTION
## UNDER 42 U.S.C. § 1983
(against the individual defendants)

113. Plaintiff, DARREN BROWN, repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

114. Defendants misrepresented and falsified evidence before the Richmond County District Attorney.

115. Defendants did not make a complete and full statement of facts to the District Attorney.

116. Defendants withheld exculpatory evidence from the District Attorney.

117. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

118. Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

119. Defendants acted with malice in initiating criminal proceedings against plaintiff.

120. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

121. Defendants lacked probable cause to continue criminal proceedings against plaintiff.

122. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

123. Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in plaintiff's favor when he was acquitted after a jury trial.

124. As a result of the foregoing, plaintiff's liberty was restricted and he was put in fear for his safety and liberty without probable cause.

**THIRD CLAIM FOR RELIEF FOR**
**DENIAL OF FAIR TRIAL,**
**FABRICATION OF EVIDENCE,**
**AND DENIAL OF DUE PROCESS**
**UNDER 42 U.S.C. § 1983**
(against the individual defendants)

125. Plaintiff DARREN BROWN repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

126. Defendants Guariano and Kapp fabricated evidence to bring about the felony indictment and trial against plaintiff.

127. Defendants Guariano and Kapp made false statements against plaintiff in order to secure his indictment and provided these statements to the district attorney's office.

128. The Defendants violated Plainitff's due process rights by failing to inform the District Attorney about the manner in which the initial questioning of witnesses took place.

129. In so doing, the Defendants prevent the District Attorney from making informed decisions about the reliability of the evidence in this case.

130. As a result of the fabrication of evidence and denial of fair trial by Defendants Guariano and Kapp, plaintiff was subjected to pretrial confinement and restrictions associated with the grant of his bail, and was forced to make several appearance in court pursuant to Defendants Guariano's and Kapp's false allegations before his charges were dismissed.

## FOURTH CAUSE OF ACTION
## FOR MUNIIPAL LIABILITY
## PURSUANT TO 42 U.S.C. SECTION 1983

131. Plaintiff DARREN BROWN repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

132. The Defendant City of New York has recklessly and with deliberate indifference failed to provide standards, policies, practices, customs, protocols, training where the only evidence they have is unreliable without corroborating forensic or other trustworthy trustworthy evidence.

133. This leads to recklessly and deliberately indifferent investigations which consciously avoid testing evidence and gathering other evidence, and leads to the arrest and prosecution of individuals who are innocent of any wrongdoing and the crime or crimes of which the individual is accused, arrested, and prosecuted.

134. The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

135. Plaintiff Darren Brown suffered injuries and damages as set forth herein.

## FIFTH CAUSE OF ACTION
## FOR LIABILITY AGAINST THE CITY OF NEW YORK FOR MALICIOUS PROSECUTION PURSUANT TO *RESPONDEAT SUPERIOR*

136. Plaintiff DARREN BROWN repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

137. Pursuant State law and pendent State claim jurisdiction, the Defendant City of New York is responsible, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of *respondeat superior*.

138. Plaintiff Darren Brown suffered injuries and damages.

    **WHEREFORE**, the plaintiff respectfully requests judgment against defendants as follows:

    i. an order awarding compensatory damages in an amount to be determined at trial;

    ii. an order awarding punitive damages in an amount to be determined at trial;

    iii. reasonable attorneys' fees and costs under 42 U.S.C. §1988; and

    iv. directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: New York, New York
       January 4, 2017

                              Respectfully submitted,

                              **LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC**
                              *Counsel for the Plaintiff*

                                        /s/
               By:   JESSICA MASSIMI (JM-2920)
                     32 Old Slip, 8th Floor
                     New York, New York 10005
                     (212) 962-1020